## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | Case No. 18-14157-MSH |
| **GEORGE E HARRIS, JR,** | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |

### MEMORANDUM AND ORDER ON WELLS FARGO BANK'S MOTION TO RECONSIDER

This case was dismissed on November 28, 2018. That same day, but after the dismissal order had taken effect, Wells Fargo Bank, N.A. filed a motion for relief from the automatic stay including a request under Bankruptcy Code § 362(d)(4)[1] for *in rem* relief with respect to the property located at 190 Wampatuck Street, Pembroke, Massachusetts, as the debtor, Mr. Harris, and a co-obligor, Brian Miller, between them had initiated four bankruptcy cases in less than two years in an alleged bad faith effort to prevent Wells Fargo from exercising its foreclosure rights. On December 13, 2018, I denied Wells Fargo's motion as moot. Wells Fargo now seeks reconsideration of my order of denial with respect to the *in rem* portion of its motion. The bank maintains that even in the absence of a pending bankruptcy case, a bankruptcy court retains jurisdiction to grant *in rem* stay relief because by statute such relief transcends the existence of the bankruptcy case in which it originated and because a court retains the inherent power to act in certain matters even after case dismissal.

Code § 362(d)(4) provides in pertinent part:

---

[1] All references to the Bankruptcy Code or the Code are to 11 U.S.C. § 101 *et seq.*

1

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay— . . .
>
> > (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—
> >
> > > (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
> > >
> > > (B) multiple bankruptcy filings affecting such real property.
>
> If recorded in compliance with applicable State laws governing notices of interests or liens in real property, **an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court**, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording.

11 U.S.C. § 362(d)(4) (emphasis added).

Wells Fargo advises that it has been unable to identify any reported decision dealing with a court's power to grant *in rem* stay relief after a bankruptcy case has been dismissed. An independent survey of the cases confirms that this does indeed appear to be a matter of first impression.

The bank offers two recent decisions by the Ninth Circuit Bankruptcy Appellate Panel (BAP), *Sepehry-Fard v. U.S. Bank, N.A. (In re Sepehry-Fard)*, B.A.P. Nos. NC-17-1118-BTaf and NC-17-1118-BTaF, 2018 WL 2709718 (B.A.P. 9th Cir. June 5, 2018) and *Benzeen Inc. v. JP Morgan Chase Bank, N.A. (In re Benzeen Inc.)*, B.A.P. No. CC-18-1097-TaLS, 2018 WL 6627275 (B.A.P. 9th Cir. Dec. 18, 2018), as instructive analogies to guide me to a favorable ruling on its motion. The BAP decisions stand for the proposition that an appeal from a

bankruptcy court's order granting *in rem* stay relief does not become moot if the bankruptcy case is subsequently dismissed. The BAP rulings were premised on the persuasive rationale that once an *in rem* stay relief order enters and is recorded, its efficacy for up to two years after its entry no longer depends on the pendency of the bankruptcy case from which it originated. Thus an appellate court's reversal of an *in rem* order, for example, even after dismissal of the underlying bankruptcy case, would afford an appellant meaningful relief.

The reasoning in *Sepehry-Fard* and *Benzeen* is not transferable to the circumstances here. Without a pending bankruptcy case, there is no automatic stay preventing a creditor like Wells Fargo from proceeding against a person or property in the first place. In other words, there simply is no stay to lift. *See Armel Laminates, Inc. v. Lomas & Nettleton Co. (In re Income Prop. Builders, Inc.)*, 699 F.2d 963, 964 (9th Cir. 1982) ("Obviously the automatic stay provided in 11 U.S.C. § 362(a) was dependent upon the operation of the bankruptcy law, and that law was pertinent only because of the existence of the proceeding in bankruptcy. . . . Once the bankruptcy was dismissed, a bankruptcy court no longer had power to order the stay . . . ."). An order lifting a non-existent stay would afford no meaningful relief.

Wells Fargo attempts to create a distinction between stay relief generally and *in rem* relief under § 362(d)(4). The bank concedes that a motion for garden-variety stay relief would indeed be moot in the absence of a stay. It disagrees, however, that the same would hold true for a motion for *in rem* stay relief which, if allowed, could remain effective as to future cases (and stays) for a period of up to two years. This, Wells Fargo claims, is meaningful relief even if no stay exists at the time the order enters.

But to be meaningful, the relief has to be actual not theoretical as the Constitution limits the judicial power of federal courts to deciding cases or controversies. *See* U.S. Const. Art. III, §

3

2, cl. 1. The doctrine of standing gives meaning to constitutional limits by "identify[ing] those disputes which are appropriately resolved through the judicial process." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). The First Circuit BAP examined the concept of standing *Sentinel Trust Co. v. Newcare Health Corp. (In re Newcare Health Corp.)*, 244 B.R. 167 (B.A.P. 1st Cir. 2000),

> Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin, 422 U.S. 490, 95 S. Ct. 2197, 45 L.Ed.2d 343 (1975)*. Hence, "a defect in standing cannot be waived; it must be raised, either by the parties or by the court, whenever it becomes apparent." *U.S. v. AVX Corp.*, 962 F.2d 108, 116 n.7 (1st Cir. 1992).
>
> The inquiry into standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth*, 422 U.S. at 498,... "In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." *Id.*

*In re Newcare Health Corp.*, 244 B.R. at 170. Our legal system does not afford parties the right to seek relief for an abstract controversy based on anticipated events which may or may not occur no matter how sincere a party's belief that the relief may eventually be needed. "To meet the requirement of constitutional standing, the plaintiff must show that it has suffered an 'injury in fact' that is: concrete and particularized and actual or imminent; fairly traceable to the challenged action of the defendant; and likely to be redressed by a favorable decision." *United States v. United Sec. Sav. Bank*, 394 F.3d 564, 567 (8th Cir. 2004) (quoting *Lujan*, 504 U.S. at 560-61). Wells Fargo has not met the constitutional minimum for standing as it seeks relief from stay when there is no bankruptcy case and no operable stay. It is in no danger of any imminent harm. Indeed, Wells Fargo is currently free to commence a foreclosure action with respect to the

subject property without restriction. Should a bankruptcy case be filed which purports to affect the property, Wells Fargo may file a motion for *in rem* relief from the stay on an expedited basis which this court will consider.

Wells Fargo offers a second analogous model in support of its argument that a bankruptcy court can rule on stay relief motions post case dismissal. It cites the decision of the Supreme Court of the United States in *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990), which validates a federal court's authority to rule on collateral issues even after an action is no longer pending. *Cooter & Gell* affirmed a court's ability to impose Rule 11 sanctions on a party after case dismissal. The Court reasoned:

> Like the imposition of costs, attorney's fees, and contempt sanctions, the imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate. Such a determination may be made after the principal suit has been terminated.

*Cooter & Gell,* 496 U.S. at 396.

The Sixth Circuit BAP in *Cusano v. Klein (In re Cusano)*, 431 B.R. 726, 733-34 (B.A.P. 6th Cir. 2010), relied in part on the reasoning in *Cooter & Gell* to uphold a bankruptcy court's jurisdiction to decide a Rule 59(e) motion to alter or amend its order dismissing a case. In other words, the BAP ruled that the dismissal of a bankruptcy case does not deprive the bankruptcy court of jurisdiction to consider a motion to alter or amend the dismissal order. *See id*.

Wells Fargo seeks to employ the rulings in *Cooter & Gell* and *Cusano* as fulcrums with which to catapult its motion for reconsideration from the realm of the debatable to the indubitable. But I see a qualitative difference between ruling on a motion for stay relief and imposing sanctions or costs, or considering whether to alter or amend a prior order. The automatic stay embodies one of the foundational principles of bankruptcy law—the breathing spell afforded to beleaguered debtors. In reorganization cases, for example, it is often the

keystone. Remove the stay and the edifice of reorganization collapses. By any measure, therefore, a motion for relief from stay cannot be classified as a collateral issue in a bankruptcy case which survives the dismissal of the case.

It is irrefutable that a court always retains the authority to correct its own errors. *Cusano* at 733. To argue that an order dismissing a case cannot be reconsidered for manifest error because the case has been dismissed is sophistry. But here Wells Fargo is asking not that I reconsider my order dismissing this case, but that I reconsider my order denying its motion for relief from stay. Without a pending bankruptcy case, however, I lack jurisdiction to grant Wells Fargo stay relief and so it would be futile for me to grant its motion for reconsideration. The motion is, therefore, DENIED.

Dated: January 14, 2019                                By the Court,

Melvin. S. Hoffman
United States Bankruptcy Judge

Counsel Appearing:   Tatyana P. Tabachnik, Esq.
　　　　　　　　　　Orlans PC
　　　　　　　　　　Waltham, MA
　　　　　　　　　　　　for the movant, Wells Fargo Bank, N.A.